UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ROBERT MURPHY,

  Plaintiff,                                CASE NO.:

-VS-

OCWEN LOAN SERVICING LLC,

  Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff, Robert Murphy, by and through the undersigned counsel, and sues Defendant, OCWEN LOAN SERVICING, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.     The TCPA was enacted to prevent companies like OCWEN LOAN SERVICING, LLC, from invading American citizens' privacy and prevent abusive "robo-calls."

2.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

3.     "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their

political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The current principal place of business of Defendant is in West Palm Beach, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1), as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Maryland, residing in Temple Hills, Prince George's County, Maryland.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Plaintiff is a "consumer" as defined in Florida Statute §559.55(8).

12. Defendant is a corporation which was formed in Delaware with its principal place of business located at 1661 Worthington Road, Ste 100, West Palm Beach FL 33409, and which conducts business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

13. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

14. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

15. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (202) *** - 2317, and was the called party and recipient of Defendant's hereinafter described calls.

16. Defendant placed a substantial number of automated calls to Plaintiff's cellular telephone (202) *** - 2317 in an attempt to collect on a mortgage.

17. On several occasions over the last four (4) years due to continued calls from Defendant to Plaintiff's aforementioned cellular telephone number, Plaintiff instructed Defendant's agent to stop calling.

18. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (800) 746-2936, and when that numbers is called, a pre-recorded message answers "Good Afternoon and thank you for calling Ocwen. Where helping homeowners is what we do."

19. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because when he answered a call from the Defendant he would hear either an extended pause before a representative would come on the line, or an automated message telling him the call was from Ocwen and to please hold the line for the next available representative.

20. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

21. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

22. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

23. Defendant attempted to offer Plaintiff the use of Defendant's services in the refinance, modification, short sale or foreclosure of an alleged debt.

24. In or about November of 2014, Plaintiff received a call from the Defendant, met with an extended pause, eventually was connected to a live representative, and requested that they provide the name of the bank that currently holds their mortgage note. Defendant's agent/representative refused to provide such information. Whereupon, Plaintiff demanded that the Defendant cease placing calls to his aforementioned cellular telephone number.

25. During the aforementioned phone conversation in or about November of 2014 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

26. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

27. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

28. Additionally, in or about January of 2016, due to continued automated calls to his aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, was eventually connected to a live agent/representative of Defendant, and informed the agent/representative of Defendant that he had previously informed them not to call his cellular phone, and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

29. Again, in or about June of 2016, due to the continued automated calls to his aforementioned cellular telephone number from the Defendant, Plaintiff returned a call to Defendant, met with an extended pause, was eventually connected to a live agent/representative of Defendant, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

30. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

31. On at least ten (10) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding his account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number. His principal reason for answering these calls and making these demands of Ocwen Loan Servicing LLC was the cumulative injury and annoyance he suffered from the calls placed by Ocwen Loan Servicing LLC. These injuries are further described in paragraphs 35 through 42 herein.

32. Each of the Plaintiff's requests for the harassment to end was ignored.

33. Defendant has placed approximately two-thousand five hundred (2,500) actionable calls to Plaintiff's aforementioned cellular telephone number. The exact number of calls will be determined upon a thorough review of Defendant's records.

34. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

35. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

36. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

37. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

40. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

41. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

42. Furthermore, the amount of calls, and the frequency of such calls placed by Defendant has caused Plaintiff stress and anxiety while he's had to deal with debilitating health conditions. Since 2005, Plaintiff has undergone a quadruple bypass, suffered from kidney failure, and suffered numerous strokes.

43. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

44. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

45. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

46. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

47. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

48. Defendant violated the TCPA with respect to the Plaintiff.

49. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

50. Plaintiff incorporates paragraphs one (1) through forty-nine (49) above as if fully set forth herein.

51. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against OCWEN LOAN SERVICING, LLC for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

53. Plaintiff realleges and incorporates paragraphs one (1) forty-seven (47) above as if fully set forth herein.

54. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

55. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

56. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of his/her or his family.

57. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against OCWEN LOAN SERVICING, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No. 105998
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: SHill@ForThePeople.com
Secondary: LCrouch@ForThePeople.com
*Attorney for Plaintiff*